```
 1              IN THE UNITED STATES DISTRICT COURT FOR
 2                  THE MIDDLE DISTRICT OF ALABAMA
 3                         NORTHERN DIVISION
 4
 5
 6   UNITED STATES OF AMERICA
 7
 8          Vs.                    CR. NO. 03-61-N
 9
10   ALBERT CARTER
11
12
13              *   *   *   *   *   *   *   *
14           INITIAL APPEARANCE AND ARRAIGNMENT HEARING
15              *   *   *   *   *   *   *   *
16           Before Hon. Vanzetta P. McPherson,
17           Magistrate Judge, at Montgomery, Alabama,
18           Commencing on March 24, 2003
19              *   *   *   *   *   *   *   *
20
21   APPEARANCES: For the Government: J.B. Perrine
22                                    Assistant U.S. Attorney
23                For the Defendant:   Tiffany McCord and
24                                     Kevin Butler,
25                                     Federal Defenders
```

```
 1            (The above case coming on for hearing at Montgomery,
 2   Alabama, March 24, 2003, before Honorable Vanzetta P.
 3   McPherson, Magistrate Judge, the following digitally recorded
 4   proceedings were had commencing at 10:05 a.m.:)
 5            THE COURT:  United States versus Albert Carter.  Mr.
 6   Carter, please rise, approach the bench, raise your right
 7   hand to be sworn.  The Defendant appears before this Court for
 8   initial appearance and arraignment.  He is accompanied by his
 9   attorney, Ms. Tiffany McCord.  Appearing on behalf of the
10   government is Mr. Perrine.
11            THE CLERK:  You do solemnly swear or affirm that the
12   testimony you give in this cause to be the truth, the whole
13   truth, and nothing but the truth, so help you God.
14            THE DEFENDANT:  I do.
15            THE COURT:  Mr. Carter; do you understand that you
16   have the right to remain silent?
17            THE DEFENDANT:  Yes, I do, Your Honor.
18            THE COURT:  That if you give up or waive that right
19   and make a statement, any statement you make can be used
20   against you.
21            THE DEFENDANT:  Yes, ma'am.
22            THE COURT:  Do you understand that you have the
23   right to be represented by counsel?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  That the right includes having your
```

```
 1   counsel physically present with you throughout these
 2   proceedings and during any encounter you may have with the
 3   lawyer for the government.
 4           THE DEFENDANT:  Yes, Your Honor.
 5           THE COURT:  Are you currently in federal or state
 6   custody?
 7           THE DEFENDANT:  Federal.
 8           MS. MCCORD:  Your Honor, for the purposes of this
 9   proceeding he is in federal custody, but prior to Friday he
10   was in state custody at Kilby.
11           THE COURT:  Under what circumstances?
12           MS. MCCORD:  Under a revocation, a state parole
13   probation revocation.
14           THE COURT:  And the revocation has already occurred?
15           MS. MCCORD:  It has not.
16           THE COURT:  It has not. He is being held for a
17   hearing.
18           MS. MCCORD:  Yes, ma'am.
19           THE COURT:  When was he placed in state custody?
20           MS. MCCORD:  I believe it was on or about February
21   19th.
22           THE COURT:  And before that, Mr. Carter, what did
23   you do for a living?
24           THE DEFENDANT:  I laid bricks and blocks, poured
25   concrete.
```

```
 1         THE COURT:  At what salary?
 2         THE DEFENDANT:  Anywhere range from 12 to $15 an
 3   hour.
 4         THE COURT:  And your testimony to the Court is that
 5   now less than a month later you have zero money?
 6         THE DEFENDANT:  Well, you know, in the winter time,
 7   it -- really don't do no work.
 8         THE COURT:  No, I don't know that.
 9         MS. MCCORD:  The type of work that he was doing,
10   Your Honor, was seasonal, and he worked with a small
11   contracting business that did not have a lot of business. I
12   believe it was his cousin's business.
13         THE DEFENDANT:  Brother-in-law.
14         MS. MCCORD:  His brother-in-law's business at the
15   time, and it was a very small business that he was working
16   with, and work was minimal.
17         THE COURT:  You have no interest in any property?
18         THE DEFENDANT:  No, Your Honor.
19         THE COURT:  How old are you?
20         THE DEFENDANT:  50.
21         THE COURT:  I'm sorry?
22         THE DEFENDANT:  50.
23         THE COURT:  You are 50 years old and you have no
24   assets what so ever? You don't own anything?
25         THE DEFENDANT:  No, Your Honor.
```

1    THE COURT: How long were you out of prison on
2 parole?
3    THE DEFENDANT: 13 years, going on 14.
4    THE COURT: And it is that parole that's about to be
5 revoked or may be revoked?
6    THE DEFENDANT: Yes, Your Honor.
7    THE COURT: Did you work for those 13 years? I am
8 having difficulty as you may notice understanding how someone
9 who is 50 years old who was out of prison until less than a
10 month ago for 13 years has absolutely no assets. How does
11 that happen?
12    MS. MCCORD: Your Honor, if I could answer --
13    THE COURT: No, I want him to answer.
14    THE DEFENDANT: How does that happen?
15    THE COURT: Yes.
16    THE DEFENDANT: Well, Your Honor, me and my wife,
17 she already had a trailer and we had took the markers up on
18 the house that we was living in.
19    THE COURT: Have you gone into bankruptcy? Have you
20 filed any bankruptcy proceedings?
21    THE DEFENDANT: No.
22    THE COURT: You just simply haven't acquired
23 anything in 13 years?
24    THE DEFENDANT: No.
25    THE COURT: What did you do with the money that you

1  borrowed from Acceptance Finance Company that has you owing
2  four thousand dollars today?
3      THE DEFENDANT: I bought a car. I was buying a car.
4      THE COURT: And you still owe two hundred 67 dollars
5  a month on the car?
6      THE DEFENDANT: Right.
7      THE COURT: Where is the car now?
8      THE DEFENDANT: My sister done take the payments up
9  on it.
10     THE COURT: So you don't owe that, it's your sister
11 who is going to pay it.
12     THE DEFENDANT: Right.
13     THE COURT: What about Royal Finance, what did you
14 borrow from them?
15     THE DEFENDANT: I borrowed some money so that I
16 could pay down on the car.
17     THE COURT: And what did you use for collateral, the
18 car?
19     THE DEFENDANT: No, I just -- they just loaned me
20 the money.
21     THE COURT: On your signature?
22     THE DEFENDANT: Yes.
23     THE COURT: You owe them just three hundred dollars?
24     THE DEFENDANT: Yeah, around three hundred dollars
25 or less.

Case 2:05-cv-00654-MEF-CSC    Document 7-8    Filed 08/24/2005    Page 7 of 12

7

1  MS. MCCORD: Your Honor, he had acquired property
2  with his wife and as a result of their separation he has
3  nothing at this point. An automobile that he did have in his
4  name only she sold.
5  THE COURT: How could that happen?
6  THE DEFENDANT: Well, after we separated and filed
7  for divorce she got a wrecker and got it and sold it.
8  THE COURT: With only your name on the title your
9  wife sold your car?
10 THE DEFENDANT: That's right.
11 THE COURT: Does the person who bought it know that
12 only your name is on it?
13 THE DEFENDANT: Well, Your Honor, at one time she
14 was having an affair with this man.
15 MS. MCCORD: And Your Honor, also, because of the
16 light work Mr. Carter did seek other employment with the
17 Wal-Mart Distribution Center, and he was working there for a
18 month prior to this incident.
19 THE COURT: Thank you. The Court has reviewed the
20 financial affidavit of the Defendant. It is signed by the
21 Defendant on this date. And based upon the information on the
22 financial affidavit and the Defendant's responses to the
23 Court's inquiries under oath the Court determines that the
24 Defendant is entitled to have an attorney appointed to
25 represent him, and appoints the Federal Public Defender for

1  that purpose. Ms. McCord, are you available?

2         MS. MCCORD:  Your Honor, our office will be taking

3  the case, I personally will not be.

4         THE COURT:  All right. Mr. Carter, you were indicted

5  or named in an indictment returned in this Court on 27

6  February, 2003; have you had a chance to read or review that

7  indictment?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Have you discussed it with Ms. McCord?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Do you understand the charges that are

12  in that indictment, or the charge?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  The Court will now advise you of the

15  limits of punishment. You are charged with possession of a

16  firearm after having been found guilty of a previous felony.

17  The maximum penalty, that is, the most that the Court can

18  impose upon you if you are found guilty is as follows: Not

19  more than two hundred 50 thousand dollars as a fine, not more

20  than or up to ten years in prison, or both two hundred 50

21  thousand dollars and a fine of ten years -- and a sentence of

22  up to ten years. In addition you may be sentenced to

23  supervised release for not more than three years following

24  your imprisonment. There is a mandatory one hundred dollar

25  assessment fee that is due and payable at the time you are

1  convicted. Do you understand?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  The Court is advised that you are now
4  prepared to enter your initial plea to this case; is that
5  correct, Ms. McCord?

6         MS. MCCORD:  That's correct, Your Honor.

7         THE COURT:  Do you understand your constitutional
8  rights, Mr. Carter?

9         THE DEFENDANT:  Yes, Your Honor.

10        THE COURT:  Do you understand the nature of the
11 charge against you?

12        THE DEFENDANT:  Yes.

13        THE COURT:  And do you understand the maximum
14 penalty that can be imposed if you are found guilty?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  How do you plead to the charge?

17        THE DEFENDANT:  Not guilty.

18        THE COURT:  The Defendant's not guilty plea will be
19 entered upon the record. Discovery, Mr. Perrine?

20        MR. PERRINE:  Your Honor, this case initiated off of
21 a complaint. The initial amount of discovery is available at
22 the U.S. Attorney's office by COB today. Going through the
23 file I noticed that there were two taped interviews. A
24 transcript was provided but the tapes would not even be
25 Jencks material anyway, so it's not due at this time, but I

```
 1   have contacted the case agent and he is working on getting me
 2   those tapes.
 3           THE COURT:  All right.
 4           MR. PERRINE:  So everything but those tapes which
 5   aren't even discoverable yet is available.
 6           THE COURT:  Well, please make sure that the
 7   production of those tapes is expedited so that when they are
 8   they will be ready.
 9           MR. PERRINE:  Yes, Your Honor.
10           THE COURT:  This case is tentatively set on the 5
11   May, 2003 term.
12           MS. MCCORD:  Your Honor, can I have a couple --
13           THE COURT:  Let me finish saying this.  This case is
14   tentatively set on the 5 May, 2003 term of court.  Mr. Carter,
15   that's when this case is set for trial.
16           THE DEFENDANT:  Yes, ma'am.
17           THE COURT:  Pretrial, a conference will be on 14
18   April, 2003 at 10:00 a.m. in this room.  Now, Ms. McCord, you
19   may have your time.
20           (Pause)
21           MS. MCCORD:  Your Honor, about the discovery and the
22   tapes, we are assuming that those tapes contain no Brady
23   material; is that correct?
24           MR. PERRINE:  I have not had a chance to review the
25   tapes, Your Honor, I just got the file from the case agent.
```

1   THE COURT: Have you reviewed the transcript?

2   MR. PERRINE: No, Your Honor, I haven't had an
3   opportunity.

4   THE COURT: All right.

5   MS. MCCORD: If there is Brady material on those
6   tapes we feel like they are discoverable now, so --

7   MR. PERRINE: The transcripts will be available in
8   the discovery that's tendered by COB today.

9   THE COURT: Today.

10  MR. PERRINE: Yeah, the transcripts are available, I
11  just don't have the full tapes.

12  THE COURT: And for my benefit, what is C-O-B?

13  MR. PERRINE: Oh, close of business, Your Honor.
14  Sorry about that, Your Honor, my apologies.

15  THE COURT: Thank you. All right. Well, when you
16  review the transcripts you can make that determination. If it
17  becomes necessary to make any further requests of the Court
18  you can do that at that time.

19  MS. MCCORD: Thank you, Your Honor.

20  THE COURT: And Mr. Butler, I think it's about time
21  now to unfasten that leash, and to the extent that it is not,
22  please try to deal with it before court.

23  MR. BUTLER: Your Honor, Ms. McCord is more than
24  competent, this is simply an issue that --

25  THE COURT: I understand.

1    MR. BUTLER: -- discovery that time and training --

2    THE COURT: I know, and I understand training. I
3 mean strange as it may seem I have been there. But at the
4 same time, court proceedings should really not be compromised
5 for that reason.

6    MR. BUTLER: That was not the intent, it was
7 preserving the record.

8    THE COURT: I really know that it was not but I just
9 want you to bear that in mind just as a matter of decorum.

10    MR. BUTLER: Yes, Your Honor.

11    THE COURT: All right. The Defendant is remanded to
12 the custody of the marshal.

13    (At which time, 10:16 a.m., the hearing was
14 adjourned.)

15                    *    *    *    *    *

16    I certify that the foregoing is a correct transcript
17 to the best of my ability from the digital recording of
18 proceedings in the above-entitled matter. This the 29th day
19 of January, 2004.

*[signature]*
Official Court Reporter