IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv654-MEF |
| | ) | (WO) |
| ALBERT CARTER, JR. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This matter is before the court on a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. On April 30, 2003, pursuant to a written plea agreement, Albert Carter, Jr. ("Carter"), pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. 922(g)(1). On August 7, 2003, Carter was sentenced to 57 months' imprisonment. The court specified that the sentence would run consecutively to the state sentence Carter was then serving.

Carter appealed to the Eleventh Circuit, challenging the district court's enhancement of his sentence based on its own fact-finding as well as the court's order that his federal sentence be served consecutively to his state sentence. In addition, Carter argued that he had received ineffective assistance of counsel. On April 8, 2005, the Eleventh Circuit dismissed Carter's appeal after finding that, under the terms of an appeal waiver contained in the plea agreement, Carter had given up his right to appeal his sentence based on two of the three

grounds asserted in his appeal – the sentencing enhancement based on the judge's factual findings and the imposition of consecutive instead of concurrent sentences. *United States v. Carter*, No. 03-14381 (11th Cir. Apr. 8, 2005) (unpublished). The Eleventh Circuit stated that it would not consider Carter's claim of ineffective assistance of counsel because the record was insufficiently developed for appellate review of such a claim. *Id.*

Carter filed this § 2255 motion (Doc. No. 1) on July 13, 2005.[1] In his motion, he claims that he received ineffective assistance of counsel[2] for the following reasons:

1. Counsel failed to argue that the district court was without jurisdiction to render judgment or impose sentence in his case.

2. Counsel failed to argue that the government committed prosecutorial misconduct by changing the charge against him from the criminal complaint to the indictment.

3. Counsel failed to object to the district court's factual finding that the firearm in his possession was stolen.

4. Counsel failed to discuss the plea agreement with him.

5. Counsel failed to provide him with a copy of the presentence investigation report.

---

[1]Although Carter's motion is date stamped "received" on July 15, 2005, under the "mailbox rule," the court deems it filed on the date he delivered it to prison authorities for mailing, presumptively, July 13, 2005, the day that he signed it. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

[2]In his initial pleading, Carter presented several substantive claims as well as independent allegations of ineffective assistance of counsel. (Doc. No. 1) In his subsequent responsive pleadings, however, he also cast his substantive claims in terms of ineffective assistance of counsel, arguing that his counsel was ineffective for failing to raise the substantive claims. (Doc. No. 10.) Thus, for organizational and analytical purposes, the court will discuss Carter's ineffective assistance of counsel claims together with the related underlying substantive claims. Where appropriate, the court recasts Carter's claims in a more logical presentation.

      6.      Counsel incorrectly advised him that he would serve his federal sentence first before having to do time on a state prison sentence.

      7.      Counsel on appeal failed to argue that the district court abused its discretion when it allowed the attorney who was dismissed by Carter at the sentencing hearing to remain in the courtroom during the hearing to assist Carter if the need for legal expertise arose.

The government answers that Carter's claims are either procedurally barred or meritless. (Doc. No. 7.) Carter was afforded an opportunity to file a responsive pleading and has done so. (Doc. No. 10.) After careful consideration of the § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is unnecessary and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II. DISCUSSION

*A.*    *Standard of Review for Ineffective Assistance of Counsel Claims*

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. To succeed on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test set by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The *performance* prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. The *prejudice* prong requires a movant to demonstrate that seriously deficient

performance of his counsel prejudiced the defense. *Id.* at 687.

Under the performance component of the *Strickland* inquiry, a movant must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

Under the prejudice component of *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice component of *Strickland* focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id.* at 687. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Unless a movant satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697 (A court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one."); *Duren v. Hopper*, 161 F.3d 655, 660

4

(11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### B.    *Ineffective Assistance of Counsel Claims*

#### 1.    **Court's Jurisdiction**

Carter argues that the district court was without jurisdiction to render judgment or impose sentence in his case and that, therefore, his counsel rendered ineffective assistance by failing to challenge the court's jurisdiction. (Doc. No. 1 at 4; Doc. No. 10 at 1 & 4.)

Carter was originally charged with violating 18 U.S.C. § 922(g)(1) in a criminal complaint sworn out by a Troy, Alabama, police officer on February 20, 2003, following an incident in which Carter shot and injured his estranged wife. (*Criminal Case No. 2:03cr61-MEF* - Doc. No. 1.) The complaint alleged that the predicate felony for the felon-in-possession charge was a 1983 Alabama state conviction for "solicitation of murder." (*Id.* at 1.) A warrant was then issued for Carter's arrest. (*Id.* - Doc. No. 2.) One week later, on

February 27, 2003, a federal grand jury sitting in the Middle District of Alabama returned an indictment charging Carter with violating 18 U.S.C. § 922(g)(1). (*Id.* - Doc. No. 3.) The predicate felony alleged in the indictment was not "solicitation of murder" as referenced in the complaint, but rather attempted murder.[3] (*Id.* at 1.) However, from a review of the sworn affidavit accompanying the complaint and the allegations in the indictment, it is clear that the predicate felony alleged in both charging instruments involved the same 1983 Alabama conviction, although mislabeled as "solicitation of murder" in the complaint. It is likewise clear that the charges in the indictment arose out of the same conduct that formed the basis of the allegations in the complaint.

Carter contends that the complaint was "frivolous" because it alleged the wrong predicate felony and insists that when he was subsequently indicted for being a felon in possession of a firearm after being convicted of attempted murder, he was "denied equal protection and due process and was left without a proper charge, and this court is without jurisdiction in this case." (Doc. No. 1 at 4.) However, Carter points to no authority – and this court can find none – holding that a difference in the predicate felony named in the criminal complaint and the predicate felony named in a subsequent indictment either deprives a defendant of any constitutional right or divests a court of jurisdiction to proceed under the

---

[3]The indictment charged, in pertinent part, that "[o]n or about the 19th day of February, 2003, in Troy, Alabama, within the Middle District of Alabama, ALBERT CARTER, defendant herein, having been found guilty of Attempted Murder, on or about March 11, 1983, in the Circuit Court of Tuscaloosa County, Alabama, in case number CC-82-1206, and having been sentenced on or about May 9, 1983, to a term of twenty-five years under the laws of the State of Alabama, did knowingly possess in and affecting commerce, a firearm, that is, a H&R .22 Caliber Revolver, in violation of Title 18, United States Code, Section 922(g)(1)." (*Criminal Case No. 2:03cr61-MEF* - Doc. No. 3.)

charges in the indictment.

Federal Rule of Criminal Procedure 7(a)(1)(B) requires the United States to prosecute by an indictment any offense punishable for more than one year in prison, of which 18 U.S.C. § 922(g)(1) is one. The indictment in Carter's case effectively supplanted the criminal complaint as the charging instrument. Carter fails even to suggest how he was prejudiced by any differences in the complaint and the indictment. The indictment contained the statutory elements of § 922(g)(1) in clear, concise language, and it sufficiently informed Carter of the charges against him so that he could prepare to meet them. *See, e.g., United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002). The court finds no merit in Carter's contention that the indictment left him "without a proper charge," and his claim that the court was without jurisdiction to render judgment or impose sentence in his case is likewise meritless.

Because Carter's substantive claim is without merit, so, too, is his claim that his counsel was ineffective for failing to raise this issue. Counsel is not ineffective for failing to raise an issue that would not succeed. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Because Carter fails to show that counsel's performance was deficient or that he suffered resulting prejudice with respect to this allegation of ineffective assistance, he is not entitled to any relief based on this claim. *See Strickland*, 466 U.S. at 687-89.

**2.    Prosecutorial Misconduct**

Carter claims that his counsel was ineffective for failing to argue that the government committed prosecutorial misconduct by "changing" the charge against him from the complaint to the indictment, thereby denying him equal protection and due process and leaving the district court without jurisdiction to render judgment or impose sentence in his case. (Doc. No. 1 at 6-7; Doc. No. 10 at 1-2.) This claim is little more than a reprise of the claim discussed above (*see* Recommendation Part II.B.1), which the court finds to be meritless. Carter demonstrates no infirmity in the indictment and fails to establish any prosecutorial misconduct in the process by which the indictment was obtained. Therefore, he fails to show that his counsel's failure to assert this claim of prosecutorial misconduct constituted deficient performance or that he suffered any prejudice as a result of counsel's performance in this regard. *Strickland*, 466 U.S. at 687-89. Accordingly, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

      3.    **Finding That Firearm Was Stolen**

Carter contends that his counsel was ineffective for failing to object to the district court's factual finding that the firearm in his possession was stolen. (Doc. No. 1 at 5 & 8; Doc. No. 10 at 2-4.)

The Presentence Investigation Report ("PSI") indicated that, following his arrest, Carter gave the police a statement indicating that the firearm found in his possession was stolen from a friend. (*PSI* at 3 ¶3; 5 ¶11.) Prior to Carter's entry of his guilty plea, his counsel moved successfully to have the contents of his statement to the police suppressed.

(*Criminal Case No. 2:03cr61-MEF* - Docs. No. 21 & 25.) At the sentencing hearing, Carter, who was allowed to dismiss his counsel at the hearing,[4] claimed that he did not steal the firearm and pointed out to the court that his statement to the police had been suppressed. (*Sentencing Hearing* at 6-7.) The court, however, rejected Carter's claim, accepted the findings in the PSI, and specifically found that the firearm was stolen, resulting in application of a two-point enhancement of Carter's offense level pursuant to U.S.S.G. § 2K2.1(b)(5). (*Id.* at 9.)

Addressing Carter's claim of ineffective assistance in an affidavit filed with this court, Carter's counsel, Joseph P. Van Heest, avers as follows:

> Mr. Carter is correct that I did not object to the two-level enhancement for the claim that the firearm was stolen. On Mr. Carter's behalf, I negotiated a 57-month sentence with the government in this 922(g)(1) case. I felt that the negotiated sentence was an excellent result considering that Mr. Carter's 2 prior sentences were for robbery and attempted murder. Also, the circumstances which led to Mr. Carter's arrest went far beyond merely possessing the firearm. In fact, he had shot his estranged wife in the face and was facing attempted murder charges in Pike County, and he had done so in front of three witnesses. The plea agreement was negotiated pursuant to Rule 11(1)(c) for the set time of 57 months. The probation office applied the two-level enhancement which was based upon the firearm being stolen. That information came from a statement which Mr. Carter gave after his arrest, but which [we] were able to suppress if the case had gone to trial. (However, even with the statement suppressed, the government still had the victim and two other eyewitnesses to the shooting, and the recovery of the firearm in Mr. Carter's vehicle, where he had been moments earlier.) Mr. Carter objected to the application of the two levels for the gun being stolen, claiming that it was not stolen, but rather borrowed with permission from a female friend. *I was in no position to challenge the claim of the firearm being stolen because Mr. Carter would not provide me the information to do so. He suggested that the*

---

[4]*See below,* Part II.B.7 of this Recommendation.

> *firearm had been borrowed from a female friend, with her permission, but would not identity her and would not let us question her to confirm that story. Furthermore, he refused to accept my explanation that his statement about the gun being stolen could be used at sentencing even though it would be suppressed at any trial.*

(*Affidavit of Atty. Joseph P. Van Heest*, Doc. No. 6 at 2-3; emphasis added.)

Carter fails to demonstrate that he is entitled to any relief based on this claim of ineffective assistance of counsel. First, Carter himself was allowed to argue at sentencing that the firearm was not stolen. Further, counsel's affidavit establishes that Carter would not cooperate with counsel by providing counsel with information that might support his contention that the firearm was not stolen but was instead borrowed from a female friend. Carter presents only unsupported, self-serving allegations that the firearm was "borrowed." Carter's counsel also correctly notes that, even though Carter's statement to the police had been suppressed, the statement could still be considered by the district court in making its sentencing determinations. *See, e.g., United States v. Torres*, 9826 F.2d 321, 324-25 (3rd Cir. 1991); U.S.S.G. § 1B1.3, comment. (backg'd). *See also, e.g., United States v. Lynch*, 934 F.2d 1226, 12134-37 (11th Cir. 1991) (the exclusionary rule does not apply to the use of illegally seized evidence when determining a sentence under the Sentencing Guidelines, at least when the evidence was not seized for the sole purpose of enhancing the defendant's sentence). Under the circumstances, this court concludes that Carter fails to show that his counsel's failure to challenge the district court's finding that the firearm was stolen constituted deficient performance or that he suffered any prejudice as a result of counsel's performance in this regard. *Strickland*, 466 U.S. at 687-89. Accordingly, he is not entitled

to any relief based on this claim.

    **4.**    **Failure to Discuss Plea Agreement**

Carter makes the cursory assertion that his counsel was ineffective for failing to discuss the plea agreement with him.. (Doc. No. 1 at 5; Doc. No. 10 at 4-5.)

The relevant portion of the record reflects that the following exchange took place during the guilty plea hearing:

> THE COURT: Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Mr. Van Heest?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is your willingness to plead guilty in this case the result of discussions that you have had with Mr. Van Heest and the discussions that Mr. Van Heest has had with Mr. Perrine, the government's lawyer?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: *Have you had an opportunity to read and review the plea agreement in this case before you signed it?*
>
> THE DEFENDANT: *No, Your Honor. We just discussed it, I ain't read it today yet.*
>
> THE COURT: You have not read it?
>
> THE DEFENDANT: Not yet.
>
> MR. VAN HEEST: You have never read this?
>
> THE COURT: *Let's adjourn and let you read it. Take Mr. Carter back to the cell block here on this floor, let him read it, and we will call the next case.*
>
>     (At which time other matters were heard by the Court, after which, the following occurred:)

11

THE COURT:  Mr. Carter is ready?

MR. VAN HEEST:  Yes, Your Honor.

MR. PERRINE:  Your Honor, do you have the original plea agreement?

MR. VAN HEEST:  I believe you do, yes.

THE COURT:  Yes.  Do you need it?

MR. VAN HEEST:  No, Your Honor.  I was just trying to keep track and make sure it was signed and before the Court.

THE COURT:  *Mr. Carter, you were previously before the Court, the Court asked you if you had read the plea agreement, you indicated that you had not. The Court took a break to allow you to do that.  Have you now read the plea agreement?*

THE DEFENDANT:  *Yes, Your Honor.*

THE COURT:  *Do you understand its terms?*

THE DEFENDANT:  *Yes, Your Honor.*

THE COURT:  *Is it any different at all from the discussion that you had with Mr. Van Heest?*

THE DEFENDANT:  *It is just one thing I just want to get clarified.*

THE COURT:  *Please ask.*

THE DEFENDANT: *That if the Court don't go along with the 57 months, and they want to enhance it, will I still have my right to withdraw my plea?*

THE COURT:  *Absolutely.*

THE DEFENDANT:  *That's all I wanted to know then.*

THE COURT:  This is a plea being entered into by Rule 11(c)(1)(C).  It permits you to enter a plea on the recommendation that you and the government have agreed to.  It does not bind the Court, the Court still has the

>discretion to sentence you to that sentence, a lower sentence, or a higher sentence. *You get to withdraw your plea under these circumstances only if the Court sentences you to a higher sentence. It doesn't mean you get to withdraw your plea if the Court changes because the Court may change and go down, in which case you don't get to withdraw; do you understand?*
>
>THE DEFENDANT: *Yes, Your Honor.*
>
>THE COURT: *You get to withdraw it if the Court exceeds the sentence or goes beyond the sentence that is agreed to in the plea agreement; do you fully understand that?*
>
>THE DEFENDANT: *Yes, Your Honor.*
>
>THE COURT: *Do you have any other questions about the plea agreement?*
>
>THE DEFENDANT: *No, Your Honor.*

(*Guilty Plea Hearing* at 4-7; emphasis added.) The hearing continued, and Carter's guilty plea was ultimately entered and accepted.

Thus, Carter's own statements to the court during the guilty plea hearing indicate that, before his guilty plea was entered and accepted, he both read the plea agreement and discussed it with his counsel, Mr. Van Heest. In addition, the court ascertained that Carter understood the terms of the plea agreement and answered any questions that Carter had about the agreement until Carter told the court that he had no further questions. "Solemn declarations in open court (at the guilty plea hearing) carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In light of the record evidence wherein Carter represented to the court that he had read the plea agreement, that he had discussed its terms with his counsel, and that he understood those terms, this court concludes that Carter fails to show that

his counsel's performance was deficient or that he suffered resulting prejudice with respect to this allegation of ineffective assistance; therefore, he is not entitled to any relief based on this claim. *See Strickland*, 466 U.S. at 687-89.

   5.   **Copy of PSI**

Carter asserts, without elaborating, that his counsel was ineffective for "den[ying] his right to a presentencing after requesting to have one." (Doc. No. 1 at 5.) Because of the vague and cursory nature of Carter's assertion, this court can only suppose that, by this claim, he is alleging that his counsel failed to provide him with a copy of the presentence investigation report ("PSI").

Addressing this claim in his affidavit filed with this court, Carter's counsel, Mr. Van Heest, notes that the Probation Office would have provided Carter with a copy of his PSI. (*Affidavit of Atty. Joseph P. Van Heest*, Doc. No. 6 at 4.) Moreover, the record reflects that at the sentencing hearing, Carter indicated to the court that he had previously reviewed the PSI and had even informed his counsel that he was concerned about "factual errors" contained in the PSI. (*Sentencing Hearing* at 4.) It is obvious that Carter was familiar with the contents of his PSI when his sentencing hearing was held.[5] This court therefore concludes that Carter has failed to show that his counsel's performance was deficient or that he suffered any resulting prejudice with respect to this allegation of ineffective assistance.

---

[5]The following remarks by Carter at the sentencing hearing indicate that he was familiar with the contents of his PSI prior to the hearing: "First of all, Your Honor, Mr. Van Heest waived all my rights. I objected to the – some of the factual errors in my presentence investigation report and I also told Mr. Van Heest I objected to those. He chose to recommend no change." (*Sentencing Hearing* at 4.) Later during the sentencing hearing, Carter made additional references to the contents of the PSI. (*Id*. at 6-7.)

*See Strickland*, 466 U.S. at 687-89.

### 6. Counsel's Advice Regarding Serving Federal Sentence First

Carter claims that his counsel, Mr. Van Heest, rendered ineffective assistance by incorrectly advising him that "he was going to do the federal sentence first," which, according to Carter, "was the only reason the defendant entered a plea of guilty." (Doc. No. 1 at 5.)

Addressing this claim in his affidavit filed with this court, Mr. Van Heest denies that he ever made any such statement to Carter. (*Affidavit of Atty. Joseph P. Van Heest*, Doc. No. 6 at 4-5.) Moreover, when, at sentencing, the district court ordered Carter's federal sentence to run consecutively to the undischarged portion of the state sentence he was then serving, the only objection levied by Carter, who had by then dismissed Van Heest as his counsel, was that the federal sentence should not run consecutively to the state sentence because his state sentence was "expired."[6] (*Sentencing Hearing* at 12.) Notably, when objecting, Carter did not claim that he had been led by Van Heest, or by anyone else, to believe that he would serve his federal sentence first. The plea agreement itself contains absolutely no reference to the order in which Carter's state and federal sentences would be served. Finally, at the guilty plea hearing, Carter testified that, other than what was set forth in the plea agreement,

---

[6]Carter's objection notwithstanding, his state sentence of 25 years for attempted murder in 1983 had not expired. Rather, he was on parole at the time of the instant offense. As a result of acts connected to the instant offense, his state parole was revoked and he was returned to prison to serve the remainder of the state sentence. The district court clearly had discretion to impose a consecutive federal sentence with the undischarged state sentence. *See* 18 U.S.C. § 3584 ; *see also, e.g., United States v. Colbert*, 977 F.2d 203, 207 (6th Cir. 1992).

no one had made any promises or assurances to him that had induced his guilty plea. (*Guilty Plea Hearing* at 7.)

"The law is quite clear that a defendant's mere hope or subjective belief of better prison conditions if a guilty plea is entered is insufficient to show that the plea was made involuntarily. This is so even if the prisoner's hope is based on incorrect advice of counsel. *Greathouse v. United States*, 548 F.2d 225, 228 n.6 (8th Cir. 1977), *cert. denied* , 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1978) (guilty plea voluntary even though counsel wrongly told defendant the federal court could make his federal sentence concurrent with a state sentence)." *Clemmons v. United States*, 721 F.2d 235, 238 (8th Cir. 1983) (citation omitted).

Furthermore, the bare allegation in Carter's § 2255 motion are insufficient to require an evidentiary hearing under *Hill v. Lockhart*, 474 U.S. 52 (1985). In *Hill*, a state prisoner filed a federal habeas corpus petition alleging that his guilty plea was involuntary because of ineffective assistance of counsel. The petitioner in *Hill* based his claim upon his counsel's affirmative misrepresentation as to what portion of an imposed sentence he would be required to serve before becoming eligible for release on parole. The Supreme Court held that in order to satisfy *Strickland's* prejudice requirement "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. *See also Slicker v. Wainwright,* 809 F.2d 768 (11th Cir.1987) (To be entitled to an evidentiary hearing on whether petitioner's lawyer incorrectly advised petitioner that the negotiated plea agreement

16

provided that he would serve less time than the maximum penalty, petitioner was required to establish that he would not have pleaded nolo contendere and would have insisted on going to trial had his lawyer not mislead him with faulty information). However, *Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations. *Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989). In the same vein, the court concludes that Carter cannot rewrite his plea agreement by the mere allegation that he would not have pleaded guilty had he known that his federal sentence would run consecutive to his state sentence. Carter testified at the plea hearing that his guilty plea had not been induced by promises or assurances not set forth in the plea agreement. At sentencing, after Carter successfully discharged his counsel and was representing himself, Carter objected to the imposition of a consecutive sentence because his state sentence had expired. (*Sentencing Hearing* at 12) He did not mention that his former counsel had made any representation to him about the sentence or that he had entered a plea on any basis other than the plea agreement. Indeed, an assertion like that would have contradicted his solemn declarations made under oath at the plea hearing. In short, the record shows that Carter made a plea agreement, and that agreement should be enforced just as it is written, not like Carter would like it written after the fact. Accordingly, he is not entitled to any relief based on this claim.

    **7.    Standby Counsel at Sentencing Hearing**

Carter contends that his counsel on appeal was ineffective for failing to argue that the

district court abused its discretion by allowing the attorney who was dismissed by Carter at the sentencing hearing to remain in the courtroom as standby counsel if the need for his legal expertise arose during the hearing. (Doc. No. 1 at 8.)

The record reflects that at the August 7, 2003, sentencing hearing, Carter told the district court that he wanted to terminate the representation by his counsel, Joseph P. Van Heest – who had up to then represented Carter throughout the proceedings and had negotiated the plea agreement on Carter's behalf. (*Sentencing Hearing* at 2-5 & 10.) Carter informed the court that he wished to represent himself at sentencing. (*Id*. at 10.) He further informed the court that, although he did not want to withdraw his guilty plea, he was dissatisfied with the way Van Heest had handled his case and specifically complained that he had asked Van Heest to ensure that the plea agreement contained a provision protecting his right to collaterally attack a prior state conviction, but that Van Heest had failed to do so. (*Id*. at 5 & 8.) In response to this complaint, Van Heest noted that, as the court had previously explained to Carter,[7] any waiver of collateral-attack rights in the plea agreement pertained only to the instant conviction and would not, despite Carter's concerns, affect Carter's right to challenge, in the state courts, the felony conviction that was the predicate

---

[7]In late May of 2003, around two months before the sentencing hearing, Carter wrote a letter to the district court judge, requesting appointment of new counsel in place of Van Heest. In June 2003, the court conducted a hearing, at which Carter declared himself satisfied with both Van Heest's representation and the contents of the plea agreement. At this hearing, the court clarified for Carter that the terms of the plea agreement in the federal case would not prevent him from challenging his 1983 state court conviction. Despite Carter's declarations at the June 2003 hearing and the court's clarification of the terms of the plea agreement, Carter again objected to the representation of Mr. Heest when his case was called for sentencing in August 2003.

offense for the federal felon-in-possession charge.  (*Id*. at 5-6.)

The court granted Carter's motion to dismiss Van Heest as counsel and allowed Carter to represent himself at the sentencing hearing. (*Sentencing Hearing* at 10.)  However, the court instructed Van Heest to remain in the courtroom as standby counsel to assist Carter if needed during the hearing. (*Id*.).  Carter maintains that the court's ruling allowing Van Heest to remain in the courtroom as standby counsel should have been asserted as error on appeal because, he says, he specifically informed the court that he "didn't want [Van Heest] to represent him under no circumstance." (Doc. No. 1 at 8.)  This claim is frivolous.

"[The court] may – even over objection by the accused – appoint a 'standby counsel' to aid the accused if and when the accused requests help."  *Faretta v. California*, 422 U.S. 806, 834-35 n.46 (1975); *see also Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1069 (11th Cir. 1986).  Carter fails even to suggest how Van Heest's presence in the courtroom as standby counsel at the sentencing hearing had any prejudicial impact upon his sentence.  The record reflects that the court allowed Carter to assert and argue all objections he wished to raise at the sentencing hearing, and the 57-month sentence ultimately imposed upon Carter was the same sentence contemplated at the time he entered his guilty plea.  There is nothing in the record indicating that Van Heest, after being ordered to assist in a standby capacity only, interfered with Carter's pro se efforts.  Consequently, Carter has not established that his appellate counsel's failure to raise this issue on appeal constituted deficient performance or that he suffered any prejudice as a result of appellate counsel's performance in this regard. *Strickland*, 466 U.S. at 687-89.  Therefore, he is entitled to no relief based on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Carter be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 20, 2007.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc)

Done this 6th day of August, 2007.

        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

.